Alan S. Baskin, SBN 013155
Daniel Nageotte, SBN 035562
WEISS BROWN
6263 North Scottsdale Road, Suite 340
Scottsdale, Arizona 85250
480-327-6650
alan@weissbrown.com
daniel.nageotte@weissbrown.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Walton U.S. Land Fund 4, LP; Walton U.S. Land Fund 5, LP; WUSF 4 GP, LLC; and WUSF 5 GP, LLC, | **Case No: 26-cv-03259-SPL** |
| Plaintiffs, | **DEFENDANTS' MOTION TO DISMISS COMPLAINT** |
| v. | |
| Ira Gaines in his individual capacity and as trustee for the Ira J. Gaines Revocable Trust Dated November 24, 2004; Peachtree Partners; and IG Holdings, Inc., an Arizona corporation, | (Oral Argument Requested) |
| Defendants. | |

Pursuant to Rule 12(b)(6), Fed.R.Civ.P., defendants move to dismiss the claims asserted against them by plaintiffs Walton U.S. Land Fund 4, LP, Walton U.S. Land Fund 5, LP, WUSF 4 GP, LLC, and WUSF 5 GP, LLC (collectively "Walton") [Doc. 1.] This motion is further supported by the following Memorandum of Points and Authorities and the filings in this action, all of which are incorporated by reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Ignoring the content of the tender offers, the complaint does nothing more than chronicle defendant Ira Gaines' background and summarily conclude that he cannot possibly have participated in those offers without having committed securities fraud. This falls far short of an actionable claim, and the complaint fails for two fundamental reasons.

First, plaintiffs are the target partnerships and their general partners – not the recipients of the Offers. Under *Piper v. Chris-Craft Industries* and *Wellman v. Dickinson,* a target corporation and its management have no implied private right of action for money damages under Section 14(e) of the Williams Act; their implied remedy is confined to injunctive and other equitable relief. Plaintiffs' Section 14(e) count seeks damages [Doc. 1 at ¶¶ 86–88; Prayer ¶ b], which *Piper* forecloses. And although plaintiffs separately request equitable relief — corrective disclosures and an injunction against future offers [Doc. 1 at Prayer ¶¶ f–g] — both Offers expired before this lawsuit was filed, leaving no live offer to enjoin or correct and no imminent future offer to support prospective relief.

Second, even if plaintiffs had the standing they lack, Count 1 fails to state a claim under the controlling Ninth Circuit decision, *In re Finjan Holdings, Inc.,* 58 F. 4th 1048 (9th Cir. 2023). Section 14(e) claims such as the present one, which sound in fraud, must satisfy Rule 9(b) and PSLRA Section 4(b)(1), meaning that the plaintiff must plausibly allege both objective and subjective falsity. *Id.* at 1058-60. The Offers themselves, to which plaintiffs pay scant attention in the complaint, contain the material disclosures directly contradicting plaintiffs' allegations. The complaint ignores these disclosures, instead doubling down on a claim that says no more than that Gaines is a bad guy.

**WEISS BROWN**
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

1

The complaint distills down to two concepts. First, it incorrectly alleges that the Offers "falsely imply an endorsement [by plaintiffs]" because a form sent with the Offers includes a Walton wordmark. Each Offer, however, is three pages long, expressly disclaims any approval by Walton, and identifies Peachtree as the offeror. The transfer form bearing the Walton wordmark is not one of the three pages of the Offers but instead is a separate document enclosed along with the Offers. The form includes no substantive language, but is an administrative, ministerial document necessary to effectuate the transfer of the units on Walton's books, all of which is plain from its face. It simply requires the person accepting the Offer to identify the partnership whose units would be transferred and the amount of units, making no reference to any of the language in the Offers or their sponsors.

Second is the argument that the Offers do not disclose Gaines' prior regulatory history and an unrelated 2023 criminal conviction. A plausible Section 14(e) claim, however, requires more than a recitation of a principal of an offeror's background, untethered to the offer at issue, and having no material connection to the terms of the offer or value of the security. Counts 2 through 4 are similarly flawed, as they either rely on the flawed Section 14(e) theory or fail for independent reasons. Last, Count 5 is duplicative. The Court must dismiss the complaint in its entirety.

## BACKGROUND

**I.      The Complaint.**

Plaintiffs are Walton U.S. Land Fund 4 and Walton U.S. Land Fund 5 and their general partners. [Doc. 1 at ¶¶ 6–9.] Defendant Peachtree Partners allegedly sent two "Offers to Repurchase," one on November 1, 2025 to limited partners of Land Fund 5, and one on February 1, 2026 to limited partners of Land Fund 4 (the "Offers"). [*Id.* at ¶¶ 50, 60.] Each Offer proposed to acquire units at a stated price, less a $300 administration fee. [*Id.* at ¶¶ 52, 62.]

The complaint devotes paragraphs 18 through 31 — the majority of its factual narrative — to allegations regarding defendants' conduct dating back to 1998: SEC administrative orders against IG Holdings and Peachtree Partners issued in 1999; a 2004

WEISS BROWN
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

2

4911-2589-1513

**WEISS BROWN**
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

federal court injunction against Gaines; a 2013 North Dakota securities order concerning a different tender Offer for a different company; and a 2023 plea by Gaines to sale of unregistered securities under 15 U.S.C. § 77e. [*Id.* at ¶¶ 18–31.] None of those events involves the limited partnerships at issue, the Offers at issue, or any conduct directed at any limited partner of any Walton entity.

The allegations regarding the Offers are sparse. Plaintiffs allege that the price is "below market" [*Id.* at ¶¶ 53, 63], that the Offers "did not disclose" Mr. Gaines's prior regulatory matters or his 2023 guilty plea [*Id.* at ¶¶ 54–57, 64–67], and that the Offers reserved the right to assign "ownership to . . . affiliates" [*Id.* at ¶ 70]. The complaint also alleges that an enclosed form was titled "Walton™ Title Transfer – Transferor," using Walton's wordmark. [*Id.* at ¶¶ 58, 68.]

## II. The Governing Documents.

Although the Offers are not exhibits to the complaint, they are incorporated by reference: the complaint quotes, describes, and characterizes them, and relies on them as the operative misleading statements. [Doc. 1 at ¶¶ 50–70, 79–85]; *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Copies of the Offers are attached as Exhibit 1 and 2 to the accompanying Declaration of Ira Gaines, which is attached as Exhibit A. The Offers contain multiple disclosures not found in the complaint: (i) it "is not subject to certain rules and regulations of the SEC" and refers recipients to the SEC's *Commission Guidance on Mini-Tender Offers and Limited Partnership Tender Offers*; (ii) it is made "without any approval or endorsement from the Partnership or General Partner, either expressed or implied"; (iii) "there is no established market for the Units and this price may not represent the fair value of your Unit"; (iv) Peachtree is "making this Offer intending to make a profit in the future"; (v) the General Partner "may respond to this Offer within 10 days" and recipients "may wish to wait until then before tendering"; and (vi) recipients have a 15-day right to rescind. [Gaines Decl. at Exs. 1-2 at 1–2.] Each disclosure appears on the first two pages of the Offer, in the same font and format as the surrounding text —— and none are mentioned in the complaint.

3

4911-2589-1513

**WEISS BROWN**
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where the plaintiff's allegations contradict a document incorporated by reference, "the document itself is controlling." *In re Finjan Holdings*, 58 F.4th at 1052 n.1.

Rule 9(b) applies to any claim that "sound[s] in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). And PSLRA Section 4(b)(1), 15 U.S.C. § 78u-4(b)(1), independently requires that any private securities action under the Exchange Act "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."

**ARGUMENT**

**I.      Plaintiffs' Section 14(e) Claim Fails for Multiple Reasons.**

**A.      Plaintiffs Lack Standing to Sue for Damages Under Section 14(e).**

Section 14(e) does not include an express private right of action, only an implied right read into it by the courts. *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 24-25 (1977). The implied right for the target of a tender offer — plaintiffs — is limited to injunctive and equitable relief, not damages. Plaintiffs, however, seek damages under Section 14 (e). *See* [Doc. 1 at ¶¶ 86-88] (alleging "damages," "cost of communications," "increased costs to engage in financing and investor capital," and "depression in value of the Fund Partnerships' units"). [Doc. 1 at Prayer ¶ b.]

In *Piper* the Supreme Court held that a "tender Offeror, suing in its capacity as a takeover bidder, does not have standing to sue for damages under § 14(e)," stating that 14(e) was enacted for "the protection of investors who are confronted with a tender Offer," not the issuer's management or the Offeror itself. *Piper,* 430 U.S. at 35, 42. The Court limited its holding:

> Whether shareholder-Offerees, the class protected by § 14(e), have

4

4911-2589-1513

> an implied cause of action under § 14(e) is not before us, and we intimate no view on the matter. Nor is the target corporation's standing to sue an issue in this case. We hold only that a tender Offeror, suing in its capacity as a takeover bidder, does not have standing to sue for damages under § 14(e).

*Id.* at 42 n.28. *Piper* reserved two questions: (1) whether shareholder-Offerees can sue at all; and (2) whether and to what extent the target corporation may sue. *Id.*

In *Wellman v. Dickinson,* 475 F. Supp. 783 (S.D.N.Y. 1979), *aff'd,* 682 F.2d 355 (2d Cir. 1982), the Southern District of New York resolved the target corporation question. The court held that "[a] target company . . . lacks standing to bring a damage action against a purchaser of its stock in a takeover or partial takeover transaction for violations of Sections 14(d) and 14(e) of the Williams Act." *Id.* at 816. The court recognized that *Piper* "does not deny standing to the target corporation to seek equitable relief." *Id.* In sum, a target corporation may sue under Section 14(e) for an injunction or other equitable remedy — but not for money damages.

Every reported decision counsel located recognizing target-corporation standing under Section 14(e) does so in the context of a preliminary injunction or other equitable relief — not damages. *See, e.g.*, *Polaroid Corp. v. Disney*, 862 F.2d 987, 1003 (3d Cir. 1988) ("A target company . . . has standing to sue, under section 14(e)'s implied right of action, to enjoin misrepresentations made by a tender offeror in connection with the offer."); *Burlington Indus., Inc. v. Edelman*, 666 F. Supp. 799, 806 (M.D.N.C. 1987) ("A target corporation . . . has standing to seek equitable relief under sections 13 and 14 of the Exchange Act."); *Florida Com. Banks v. Culverhouse*, 772 F.2d 1513, 1518–19 (11th Cir. 1985); *see also Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*, 2014 WL 5604539, at *7 n.3, *14 (C.D. Cal. Nov. 4, 2014).

This Court is bound by the same limitation, as the Ninth Circuit has recognized a target company's implied Section 14(e) action for injunctive relief against the offeror, not for damages, and has held that curative disclosure — not damages — is the "standard and . . . preferred remedy" under the Williams Act. *Pac. Realty Tr. v. APC Invs., Inc.*, 685 F.2d 1083, 1085–1086 (9th Cir. 1982). The bar extends to issuers as a class. Indeed, because a damages

**WEISS BROWN**
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

4911-2589-1513

remedy would "tip the balance" between issuer and acquiror and frustrate the Act's evenhanded design, the appellate courts uniformly confine issuers to equitable relief and deny them money damages under the Williams Act. *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 621 (2d Cir. 2002). Defendants are aware of no decision of any federal court of appeals recognizing a target corporation's standing to recover money damages under Section 14(e).

Plaintiffs do, however, fit *Wellman*'s target-corporation category. The fund partnership plaintiffs are the issuers whose units are the subject of the Offers and the general partner plaintiffs are the issuers' managers. [Doc. 1 at ¶¶ 6–9, 50, 60.] They sit in the same position *Wellman* identified as outside the damages remedy under Section 14(e). And the monetary relief Count 1 seeks is damages. [Doc. 1 at ¶¶ 86–88; Doc. 1 at, Prayer ¶ b.] Under *Piper* and *Wellman*, plaintiffs have no implied private right of action for those damages.

Defendants recognize that *Wellman* does not preclude a claim for equitable relief, and plaintiffs do request it. But their equitable requests cannot survive either. The only equitable relief plaintiffs request is corrective disclosures and an injunction against future offers. [Doc. 1 at, Prayer ¶¶ f–g.] Neither can survive. The November 1, 2025 Offer expired January 1, 2026, and the February 1, 2026 Offer expired April 1, 2026 — both before this lawsuit was filed on May 8, 2026. [*See* Gaines Decl., Exs. 1-2.] With no pending Offer and no recipient who can still tender, there is nothing left to enjoin and no statement left to correct; and the request to enjoin hypothetical future offers cannot rest on past conduct alone but requires a real and immediate threat of future injury, which the complaint does not allege. In all events, the equitable requests rise or fall with the Section 14(e) merits and fail for the independent reasons set out in Sections I.B–F below. Counts 2–4 likewise restate the same alleged Section 14(e) misconduct as Arizona-law claims seeking the same damages that Section 14(e) does not allow. [*See* Doc. 1 at ¶¶ 94, 99, 107.] Plaintiffs cannot bypass the federal damages bar by rebranding flawed Section 14(e) claim as common law claims.

### B.    Count 1 Fails to State a Section 14(e) Claim.

Even if plaintiffs had the standing they lack, Count 1 still does not pass muster.

WEISS BROWN
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

6

Section 14(e) makes it unlawful to "make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made . . . not misleading . . . in connection with any tender Offer." 15 U.S.C. § 78n(e). Under *In re Finjan Holdings*, Count 1 fails for multiple reasons.

### 1.    The Section 14(e) claim cannot meet the pleading standards found in Rule 9(b) and the PSLRA.

*Finjan* sets out four elements for a Section 14(e) claim: the plaintiff must plausibly allege (1) that the speaker did not actually believe the statements made ("subjective falsity"); (2) that the statements were objectively false ("objective falsity"); (3) that recipients foreseeably relied on them in tendering; and (4) resulting economic loss. *In re Finjan Holdings, Inc.*, 58 F.4th at 1051–52. The complaint satisfies none. While Section 14(e)'s first clause requires only negligence, *Varjabedian v. Emulex Corp.*, 888 F.3d 399, 408 (9th Cir. 2018), when a Section 14(e) claim "sounds in fraud" — as where the plaintiff alleges that the defendant knowingly or recklessly made false or misleading statements — Rule 9(b)'s particularity requirement applies. *In re Finjan Holdings*, 58 F.4th at 1057; *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022–23 (9th Cir. 2000). Plaintiffs plead just that: the complaint alleges that Defendants "made the Offers with actual knowledge" of falsity "or with reckless disregard," and "knew (or were reckless in not knowing)" that the prior violations "were required to be disclosed." [Doc. 1 at ¶ 84.]

Section 4(b)(1) of the PSLRA imposes an independent particularity requirement. *In re Finjan Holdings*, 58 F.4th at 1057. Plaintiffs were required to specify, with particularity, "each statement alleged to have been misleading," the reasons why each is misleading, and — because key allegations are pled on information and belief [Doc. 1 at ¶¶ 12–13, 59, 69, 74] — "all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The complaint fails at all levels. It does not identify with particularity any statement in the Offers alleged to be "untrue"; it proceeds entirely on a theory of omission, listing items it says were not disclosed [Doc. 1 at ¶¶ 54–57, 64–67] and summarily concluding that those omissions were "material" [Doc. 1 at ¶¶ 81–83]. That is the "threadbare recital" *Iqbal* forbids. *Iqbal*, 556

WEISS BROWN
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

7

U.S. at 678.

### C.   The Offers Expressly Disclaim Any Endorsement, and the Enclosed Forms Cannot Plausibly Imply One.

Plaintiffs contend that the Offers "falsely imply an endorsement" because they "enclos[ed] a form bearing Plaintiffs' wordmark." [Doc. 1 at ¶¶ 3, 58, 68.] But the Offers expressly disclaim any such endorsement, stating that they are made "without any approval or endorsement from the Partnership or General Partner, either expressed or implied." [Gaines Decl., Exs. 1-2 at 1.] "[W]here a complaint incorrectly summarizes or characterizes a legally operative document . . . incorporated by reference in the complaint, . . . the document itself is controlling." *In re Finjan Holdings,* 58 F.4th at 1052 n.1; *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

The Offers — "Peachtree Partners offers to purchase units … of …" — bear "Peachtree Partners" in its header banner and "Peachtree Partners 1819 E Morten Ave, Ste 180 Phoenix, AZ 85020" in its footer. [*Id.* at 1–3.] They contain, in their identification blocks, the words "Partnership: Walton US Land Fund 4" — identifying the partnership whose units are being assigned — but lack a Walton logo, a Walton trademark, or any Walton branding. [Gaines Decl., Exs. 1-2 at 3.] The assignment form enclosed at page 3 of each Offer is labeled "Assignment Form & Limited Power of Attorney" and bears Peachtree's name — not "Walton™ Title Transfer – Transferor." [Gaines Decl., Exs. 1-2 at 3.] It too lacks any Walton branding or logo.

The Walton-branded form Plaintiffs point to is the "TITLE TRANSFER – TRANSFEROR" form — bearing the Walton™ wordmark, designated "FORM: TTT-01," and directing completed transfers to Walton's transfer agent in Larkspur, California. *See* [Gaines Decl., Ex. 3.] Even recognizing that Peachtree enclosed that transfer form with the Offers, its presence cannot plausibly signal the issuer's endorsement. The form is a ministerial instrument used to record a transfer of units on the partnership's books. The Offer itself expressly disclaims any such approval or endorsement — nothing on the transfer form states or suggests that the partnership or general partner approves, recommends,

WEISS BROWN
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

8

4911-2589-1513

endorses, or is a party to Peachtree's Offer. [Gaines Decl., Exs. 1-2 at 1.] No reasonable investor reading an Offer that expressly disavows any approval or endorsement by the issuer, and that plainly identifies Peachtree as the offeror, could infer the issuer's endorsement from a transfer form bearing only the fund's name.

### D.    There Was No Duty to Disclose Gaines' Collateral Background.

The Offers disclose every economic fact bearing on a reasonable investor's tender decision: that the price may not be fair value, that the Offer is profit-motivated; that the partnership is private with limited public information; that no plaintiff has endorsed the Offer; that the general partner may issue a response that the recipient should wait to read; that the SEC's limited-partnership tender-offer rules are different, and that the investor has a 15-day right to rescind.  [*See* Gaines Decl., Exs. 1-2.]  The Offers are not "materially misleading" under Section 14(e).

Given that the plain language of the offers themselves defeats any argument of material misrepresentations or omissions as to their substance, Count 1 devolves to a single contention: Section 14(e) required the Offers to disclose Gaines' regulatory background and 2023 guilty plea.  [Doc. 1 at ¶¶ 54–57, 64–67.]  That theory is wrong as a matter of law. "Silence, absent a duty to disclose, is not misleading." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988); *accord Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44–45 (2011).  An omission is actionable under Section 14(e) only where there is an affirmative duty to speak.  Plaintiffs identify none.

At its core Count 1 is a pure omissions claim, and pure omissions are not actionable. Section 14(e) prohibits omitting a material fact "necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading" — which directly parallels Rule 10b-5(b).  15 U.S.C.§ 78n(e); 17 C.F.R. § 240.10b-5(b). In *Macquarie Infrastructure Corp. v. Moab Partners, L.P.,* the Supreme Court held that this language applies only to half-truths, not pure omissions, because it "requires identifying affirmative assertions (*i.e.*, 'statements made') before determining if other facts are needed to make those statements 'not misleading.'"  601 U.S. 257, 264 (2024).  "Pure omissions are not actionable," and

WEISS BROWN
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

9

nondisclosure "can support a [Rule 10b5 claim] only if the omission renders affirmative statements made misleading." *Id.* at 260, 265.

The Ninth Circuit has followed suit. *See Constr. Laborers Pension Tr. of Greater St. Louis v. Funko Inc.*, 166 F.4th 805, 824 (9th Cir. 2026) (applying *Macquarie* and holding statements not misleading where executives "did not reveal more detailed information"); *Sodha v. Golubowski*, 154 F.4th 1019, 1033 (9th Cir. 2025) (no disclosure required "[a]s long as the omissions do not make the actual statements misleading"). The complaint never identifies any statement in the Offers rendered misleading by the nondisclosure of Gaines' background; it only lists matters not included in the Offer. [Doc. 1 at ¶¶ 54–57, 64–67.] These are pure omissions; *Macquarie* controls and the Section 14(e) claim fails.

The Ninth Circuit has applied this analysis rule to materially identical facts, holding that a principal's undisclosed misconduct is not an actionable omission unless the speaker's own statements "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017). The Offers here say nothing about Gaines' character, integrity, or regulatory background — so there is no affirmative statement that the nondisclosure of his history could render misleading.

An offeror's reputation, criminal history, or unrelated regulatory disputes — disconnected to the price, terms, or financial condition of the offer — are not "material" to a tender decision. Materiality requires "a substantial likelihood that a reasonable [investor] would consider it important in deciding" whether to tender. *Basic*, 485 U.S. at 231. The reasonable investor cares whether the price is fair and whether the transaction will close — not whether the buyer has had regulatory challenges in unrelated matters. That is especially so where, as here, all the information plaintiffs say is "omitted" is a matter of public record. [Doc. 1 at ¶¶ 21–22, 26, 30–31] (citing dockets and release numbers).

Nor does any disclosure rule supply the affirmative duty the complaint assumes. The itemized bidder-background disclosures — including any obligation to report a bidder's prior civil or criminal proceedings — are creatures of Regulation 14D and Schedule 14D-1, which

WEISS BROWN
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

10

**WEISS BROWN**
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

by statute reach only tender offers for a class of equity securities registered under Section 12 of the Exchange Act.  15 U.S.C. § 78n(d)(1); 15 U.S.C.A. § 78n (West). The units here are privately held limited partnership interests that are not registered under Section 12, are not publicly traded, and have no established market — so Regulation 14D and its disclosure schedule do not apply, whatever percentage an offer seeks.  Section 14(e)'s antifraud prohibition does reach tender offers for any security, registered or not, but it imposes only a duty not to mislead — not the itemized affirmative-disclosure obligations of Section 14(d).

### E.    Plaintiffs do not Plead Subjective Falsity or Loss Causation.

In addition to having no standing, failing to rely on the text of the Offers themselves, and failing to plead materiality, because plaintiffs proceed on an omission theory, their claim must satisfy the "subjective falsity" requirement — plausible allegations that the speaker did not believe what was said. *In re Finjan Holdings*, 58 F.4th at 1056; *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017).  The complaint makes no claims that defendants did not believe the price was fair or any of the terms of the Offers were inaccurate, or that defendants believed they had — but ignored — a duty to chronicle the last 25+ years of Gaines' life to enable the offerees to decide whether to sell their units.  Instead, the complaint summarily concludes that Defendants "knew" the Offers were misleading.  [Doc. 1 at ¶ 84.]  Under *Iqbal* and *Finjan*, that is not enough.

Loss causation fails for the same reason: plaintiffs allege the Offers "artificially depressed" unit "market price" [Doc. 1 at ¶ 86] — but the partnerships are not publicly traded or otherwise liquid, which is in part the reason for tender offers — and as a result "there is no established market for the Units." [Gaines Decl., Exs. 1-2 at 1.]  Given this circumstance, defendants could not have depressed a non-existent market price, and it is plain from the face of the Offers that defendants were looking to buy units at a discount — plaintiffs cannot credibly argue to the contrary.

## II.    Counts 2-4 — the State Law Counts — Fail.

If the Court dismisses Count 1, it should decline supplemental jurisdiction over the remaining state-law claims.  28 U.S.C. § 1367(c)(3).  Alternatively, each claim fails on the

11

4911-2589-1513

merits.

### A.    Count 2 — Breach of Contract.

To state a breach-of-contract claim plaintiffs must allege the existence of a contract, its breach, and resulting damages. *Steinberger v. McVey*, 234 Ariz. 125, 140, 318 P.3d 419, 434 (Ct. App. 2014). Count 2 alleges that the Gaines Trust and IG Holdings violated Section 8.2(c) of the partnership agreement, which provides that no limited partner shall "hold such [limited] Partner out as having the power or authority to bind the Partnership, the General Partner, or any Partner as such." [Doc. 1 at ¶ 92.] Making a third-party offer to purchase units — one that expressly disclaims "approval or endorsement from the Partnership or General Partner" [Gaines Decl., Exs. 1-2 at 1] — is not "holding [oneself] out as having the power or authority to bind" the partnership.

Section 8.2 targets affirmative representations of authority to bind, not offers to transfer. Plaintiffs themselves rely on Section 9.2 of the same Partnership Agreement, which expressly contemplates transfers (with General Partner consent). [Doc. 1 at ¶ 110.] *Starr Pass Resort Devs., LLC v. Pima Cnty.*, 257 Ariz. 505, 514, 550 P.3d 1111, 1120 (Ct. App. 2024) (clear contractual terms are enforced as written). Equally fatal: plaintiffs do not allege damages flowing from any breach by the Gaines Trust or IG Holdings — the "cost of communications with limited partners" [Doc. 1 at ¶ 94] result, if at all, from Peachtree's conduct, not these Defendants.

### B.    Count 3 — Tortious Interference with Contract.

To plead intentional interference with contract a plaintiff must allege a valid contract, defendant's knowledge of it, intentional interference inducing or causing a breach, improper conduct, and resulting damages. *Miller v. Hehlen*, 209 Ariz. 462, 471, 104 P.3d 193, 202 (Ct. App. 2005). Count 3 fails for at least three reasons. First, Count 3 fails for the same reason as Count 2: there is no plausibly alleged underlying breach to induce. Second, the complaint's allegation of "improper" conduct rests entirely on the deficient Section 14(e) theory. [Doc. 1 at ¶ 98.] A third-party purchase offer at an arms-length price is lawful competitive conduct. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395*, 201 Ariz. 474,

**WEISS BROWN**
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

12

494, 38 P.3d 12, 32 (2002) (seven factor analysis to determine whether the defendant's conduct was improper or wrongful). A competitor "does not act improperly if his purpose at least in part is to advance his own economic interests." *Miller*, 209 Ariz. at 471, 104 P.3d at 202. Third, plaintiffs cannot sue Gaines individually for inducing a breach by his alleged alter egos. [Doc. 1 at ¶¶ 50, 65, 80, 97.] Because the duty not to interfere "arises out of law, not contract," *Wells Fargo*, 201 Ariz. at 493, 38 P.3d at 31. a party is not liable for inducing himself to breach his own contract.

### C.   Count 4 — Interference with Business Expectancy.

A claim for tortious interference with business expectancy requires a specific, identifiable business expectancy, not a generalized hope of future business. *Miller*, 209 Ariz. at 471, 104 P.3d at 193. The complaint vaguely alleges an amorphous "valid business expectancy with potential investors, including investors in affiliates of Plaintiffs." [Doc. 1 at ¶ 101.] It fails to identify any particular investor, transaction, or opportunity with which any defendant interfered. Count 4 also relies on Gaines' alleged statement that "Plaintiffs and their affiliates have 'never returned any money to any investor.'" [Doc. 1 at ¶¶ 73–76, 104.] Even taking that as true, plaintiffs do not allege who the recipient was (other than "an individual"), when the statement was made (other than "[a]round November 2025"), or what concrete business opportunity was lost. That falls below Rule 8's plausibility standard, let alone the Rule 9(b) standard that applies because the statement is alleged to be knowingly false. [Doc. 1 at ¶ 76.]

### III.   The Declaratory Judgment Count — Count 5 — Should Be Dismissed.

Count 5 seeks a declaration under 28 U.S.C. § 2201 that the General Partners "may reject any transfer made as a result of any partner accepting an Offer" under Section 9.2 of the Partnership Agreement. [Doc. 1 at ¶¶ 109–11.] Although a declaratory-judgment claim is equitable and is not foreclosed by *Piper/Wellman*, Count 5 nevertheless should be dismissed.

The availability of relief under the Declaratory Judgment Act "presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). The Act does not provide an independent cause of action where none otherwise exists. *City of*

**WEISS BROWN**
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

13

*Reno v. Netflix, Inc.*, 52 F. 4th 874, 878-79 (9th Cir. 2022) (further citation omitted); *see also Ali v. Rumsfeld,* 649 F.3d 762, 778 (D.C. Cir. 2011) ("plaintiffs have not alleged a cognizable cause of action and therefore have no basis upon which to seek declaratory relief. Nor does the Declaratory Judgment Act ... provide a cause of action."); *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) ("[Section] 2201 does not create an independent cause of action.").

The Act "only creates a remedy" and not an independent claim, *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1156 (W.D. Wash. 2017) (dismissing standalone declaratory-relief count because declaratory relief is "not [a] separate legal cause[ ] of action" but a form of relief).  Count 5 is duplicative of and dependent on the substantive claims. With Counts 1–4 dismissed, the declaratory relief count must also necessarily fail.

The request is also moot or stale, as the time to tender has long passed, and the complaint makes no allegations that plaintiffs have or wish to reject any transfers pending the Court's ruling.  Declaratory relief requires "a substantial controversy ... of sufficient immediacy and reality," and a declaratory claim "may become moot where a change in the circumstances that prevailed at the beginning of the case 'forestalls any occasion for meaningful relief.'" *Abolish Abortion Or. v. City of Grants Pass*, 593 F. Supp. 3d 1047, 1054 (D. Or. 2022).  A court thus "cannot grant the declaratory relief plaintiffs seek where ... the controversy is no longer real or immediate." *Id.* at 1055.  *See Maydak v. Bonded Credit Co.,* 892 F.Supp. 1304, 1308 n.7 (D. Or. 1995).

Last, the request is advisory: plaintiffs ask for a declaration that Section 9.2 means what it says.  No reason exists for this Court to put any further gloss on the Partnership Agreement.

### CONCLUSION

Plaintiffs do not have standing to bring a Section 14(e) damages claim and have not otherwise pled a viable cause of action under *Piper*, *Wellman*, and *In re Finjan Holdings*. Defendants respectfully request that the Court dismiss the complaint in its entirety, with prejudice.

WEISS BROWN
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

14

RESPECTFULLY SUBMITTED this 2nd day of July, 2026.

WEISS BROWN

By: */s/ Alan S. Baskin*
Alan S. Baskin
Daniel F. Nageotte
6263 N. Scottsdale Road, Suite 340
Scottsdale, Arizona 85250

*Attorneys for Defendants*

**WEISS BROWN**
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA  85250
480.327.6650

15

4911-2589-1513

**CERTIFICATION OF COUNSEL**

Pursuant to LRCiv. 12.1(c), undersigned counsel for defendants certifies that prior to filing the motion to dismiss he spoke with plaintiffs' counsel twice via videoconference about the issues raised in the motion. The parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by plaintiffs.

RESPECTFULLY SUBMITTED this 2nd day of July, 2026.

WEISS BROWN

By:  /s/ Alan S. Baskin
Alan S. Baskin
Daniel F. Nageotte
6263 N. Scottsdale Road, Suite 340
Scottsdale, Arizona 85250

*Attorneys for Defendants*

**WEISS BROWN**
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA  85250
480.327.6650

16

4911-2589-1513

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing.


*/s/ Cristina McDonald*

**WEISS BROWN**
6263 N. SCOTTSDALE ROAD STE. 340
SCOTTSDALE, ARIZONA 85250
480.327.6650

17

4911-2589-1513