Brian A. Cabianca (AZ Bar No. 016410)
brian.cabianca@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone: (602) 528-4000
Facsimile: (602) 253-8129

Sean L. McGrane (*pro hac vice*)
sean.mcgrane@squirepb.com
James M. Brennan (*pro hac vice*)
james.brennan@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
1000 Key Tower, 127 Public Sq.
Cleveland, OH 44114
Telephone: +1 216 479 8500
Facsimile: +1 216 479 8780

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Walton U.S. Land Fund 4, LP; Walton U.S. Land Fund 5, LP; WUSF 4 GP, LLC; and WUSF 5 GP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Ira Gaines in his individual capacity and as trustee for the Ira J. Gaines Revocable Trust Dated November 24, 2004; Peachtree Partners; and IG Holdings, Inc., an Arizona corporation,<br><br>Defendants. | Case No. 2:26-cv-03259-SPL<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT** |

## I. PRELIMINARY STATEMENT

Defendants' Motion to Dismiss is wrong on both the law and the facts it impermissibly attempts to introduce at the pleading stage. Defendants spend much time arguing that Plaintiffs lack standing to assert a claim for money damages under Section 14(e) of the Exchange Act, but never even address Ninth Circuit precedent regarding

standing for damages claims under Section 14(e). At minimum, Plaintiffs have standing to obtain injunctive relief for Section 14(e) violations, and the Motion's passing argument to the contrary does not even apply the governing standards.

For each and every claim, the Motion also relies on factual assertions that are not pleaded in the Complaint and create factual disputes which are not appropriately resolved on a motion to dismiss. For these reasons, in addition to the reasons set forth below, Defendants' motion should be denied.

## II. <u>STATEMENT OF FACTS</u>

Plaintiffs are two partnerships ("Fund Partnerships") and the general partners for those partnerships ("Fund General Partners"). [Compl. ¶¶ 6–9, 32–37.] Under the operative Partnership Agreements, units in the Fund Partnerships can be transferred only with consent of the Fund General Partner. [*Id.* ¶ 43 (citing Partnership Agreement § 9.1).] Additionally, the Partnership Agreements prohibit any limited partner from "hold[ing] such [limited] Partner out as having the power or authority to bind the [Fund] Partnership, the [Fund] General Partner, or any [other limited] Partner as such." [*Id.* ¶ 41 (quoting Partnership Agreement § 8.2(c)).]

Defendant Gaines is a convicted felon and serial securities huckster. [*Id.* ¶ 1.] From 1998 to 1999, the SEC determined in administrative proceedings that Mr. Gaines's alter egos, Defendant IG Holdings and Defendant Peachtree Partners, violated the Exchange Act and its regulatory requirements for Tender Offers, which Mr. Gaines admitted to. [*Id.* ¶¶ 21–23.] Immediately after that settlement with the SEC, Mr. Gaines made hundreds of violative mini-tender offers which resulted in an SEC complaint and a settlement prohibiting Mr. Gaines from ever making mini-tender offers to public companies. [*Id.* ¶¶ 24–26.] In 2013, Mr. Gaines, through Peachtree Partners, had a tender offer summarily suspended by the North Dakota Securities Commissioner because the offer was materially misleading for failing to disclose "regulatory actions taken by the Securities and Exchange Commission against Peachtree Partners, Ira J. Gaines, and other entities controlled by Gaines, concerning mini-tender offers of public companies." [*Id.* ¶¶ 27–28.] After

attempting to avoid his securities transactions by engaging third parties to hide his true identity, Mr. Gaines was criminally charged and ultimately pleaded guilty in 2023 to a felony violation of 15 U.S.C. § 773, sale of unregistered securities. [Compl. ¶¶ 29–31.]

From 2024 to 2026, Mr. Gaines, through his alter egos of the Gaines Trust and IG Holdings, purchased units in the Fund Partnerships and requested a list of other unit holders in the Fund Partnerships. [*Id.* ¶¶ 45–49.] On November 1, 2025, and February 1, 2026, Defendant Peachtree Partners, also an alter ego of Mr. Gaines, sent Offers to limited partners in the Fund Partnership. [*Id.* ¶¶ 50, 60.] Despite the fact that Plaintiffs—not Defendants—sold the units initially, both Offers were titled "Offer to Repurchase." [*Id.* ¶¶ 51, 61.] The Offers included a form bearing Plaintiffs' wordmark and purported to "reserve the right to assign [Peachtree Partners'] ownership to [its] affiliates," including Mr. Gaines. [*Id.* ¶¶ 58–59, 68–69.] The unit price in both Offers was well below the market price for the units. [*Id.* ¶¶ 53, 63.] And neither Offer contained any disclosure of Defendants' prior securities law violations. [*Id.* ¶¶ 54–57, 64–67.]

## III. LEGAL STANDARD

"On a motion to dismiss, it is the defendant's burden to demonstrate that the plaintiff has failed to state a claim." *Borteanu v. Nikola Corp.*, No. 20-cv-01797-PHX-SPL, 2023 WL 11017679, at *3 (D. Ariz. Dec. 8, 2023) (Logan, J.) (denying in part motion to dismiss Exchange Act claims). "Factual allegations in the complaint should be assumed true, and a court should then 'determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "Facts should be viewed 'in the light most favorable to the non-moving party.'" *Id.* (quoting *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013)).

For fraud claims, Fed. R. Civ. P. 9(b)'s heightened pleading standard "requires a pleading to identify 'the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Id.* at *3 (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

For securities fraud claims, pursuant to Section 4(b)(1) of the PSLRA, "to properly allege falsity, a securities fraud complaint must now specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading." *Id.* (internal quotation marks and alterations omitted) (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009); 15 U.S.C. § 78u-4(b)(1)). To plead subjective falsity for an Exchange Act Section 14(e) claim, the plaintiff "need provide only enough factual material to create a 'reasonable inference'—not a 'strong inference'—of subjective falsity." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 (9th Cir. 2023).

## IV. ARGUMENT

As addressed in turn below, (A) Plaintiffs have standing to assert claims for damages and injunctive relief on their claim for Section 14(e). On the merits, (B) Plaintiffs have also stated a claim for Section 14(e) in Count 1. Similarly, (C) Plaintiffs have stated a claim in Counts 2 through 5. For these reasons, Defendants' Motion should be denied.

### A. Plaintiffs Are Not Precluded from Damages or Injunctive Relief on a Section 14(e) Claim

Section 14(e) of the Exchange Act, as amended by the Williams Act, makes it unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made . . . not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer[.]" 15 U.S.C. § 78n(e).

Defendants concede that Section 14(e) has a private right of action for the target of a tender offer, like Plaintiffs, to at least pursue the equitable relief demanded in the Complaint. *See* Mot. at 6:13–14. Instead, Defendants argue that (1) there is a "federal damages bar" and no standing for target companies to seek damages under Section 14(e), *see id.* at 6:25–26, and (2) Plaintiffs cannot obtain equitable relief of corrective disclosures or an injunction against future offers because the current Offers expired, *see id.* at 6:14–21. Neither argument has merit, and the second undermines the first.

**1. Plaintiffs Have Standing Under Section 14(e) for Damages**

Defendants' argument for a damages bar is based on one out-of-circuit district court's interpretation of the Supreme Court's holding in *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1 (1977). In *Piper*, the Court held that "a defeated tender offeror[] has no implied cause of action for damages under [Section 14(e)]." 430 U.S. at 42. Critically, the *Piper* Court expressly described its holding as "a limited one" that did not address "shareholder-offerees" nor "the target corporation's [i.e. Plaintiffs'] standing to sue." *Id.* at 42 n.28. Nevertheless, Defendants rely upon one New York district court decision from 1979 as "resolv[ing]" the question of a target's standing for damages action, where the district court stated that "the [*Piper*] Court's reasoning forecloses a damage suit" by the target of a tender offer. *Wellman v. Dickinson*, 475 F.Supp. 783, 816 (S.D.N.Y. 1979).

This statement in *Wellman* does not foreclose Plaintiff's damages relief for multiple reasons. First, the statement of one out-of-Circuit district court is not binding on this Court, particularly as it is not clear in *Wellman* whether the target company even sought damages against the tender offeror. *See* 475 F.Supp. at 795 (describing target corporation as bringing action for violations "similar to those charged in the [SEC]'s case" but not mentioning damages), 816 (analyzing whether target corporation has standing "to seek equitable relief after the transaction has been consummated").

Second, since *Piper*, the Ninth Circuit has allowed actions for damages under Section 14(e) in a similar context to target corporations: non-tendering shareholder-offerees. *See Plaine v. McCabe*, 797 F.2d 713, 718 (9th Cir. 1986) ("[W]e follow the lead of the Fifth and Second Circuits and hold that in these circumstances even a non-tendering shareholder may bring suit for violation of section 14(e)."), 722 (analyzing measures of actual damages). The Ninth Circuit's holding as to non-tendering shareholders applies with equal force to target companies like Plaintiffs. The Ninth Circuit in *Plaine* also stated that "[a] non-tendering shareholder may also complain derivatively of injury to the target company." *Id.* at 718 n.8 (citing *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 596 (5th Cir.)). Moreover, the Second Circuit, in an opinion with which the *Plaine* Court expressly

agreed, held that both "the nontendering stockholder and the corporation" have standing "under all the provisions added to § 14." *Elec. Specialty Co. v. Int'l Controls Corp.*, 409 F.2d 937, 946 (2d Cir. 1969).

Thus, Defendants' position would up-end Ninth Circuit precedent by allowing non-tendering shareholders to *derivatively* assert Section 14(e) claims for damages on behalf of target companies, but prohibit the target companies from doing so directly. This is not compelled by the Supreme Court's decision in *Piper* nor an opinion of the Southern District of New York. Perhaps for this reason, the Motion does not even mention *Plaine*.

Defendants' cases addressing Section 14(e) claims "in the context of a preliminary injunction or other equitable relief" do not constitute a "bar" on damage actions by target companies. [Mot. at 5:14–22, 27.] That target companies often seek equitable relief, and that Courts to date address issues relating to such claims, does not foreclose target companies from seeking non-equitable relief in other circumstances. *See generally* Fed. R. Civ. P. 8(a)(3) (a claim may include alternative forms of relief).

Further, not only does Section 14(e) allow a private right of action for target companies to seek damages (consistent with the reasoning of *Plaine*), but Defendants provide no support for their contention that there is a "federal damages bar" that would prevent Plaintiffs from recovering costs under state law claims. [Mot. at 5:23–26.] The preemption provision of the PSLRA, 15 U.S.C. § 78bb(f)(1), applies to "covered class actions," not all securities actions that include state law claims.

**2. Plaintiffs Can Obtain Injunctive Relief under Section 14(e).**

Defendants are also wrong that the requested injunctive relief—including a permanent injunction against future offers as to Plaintiffs—is unavailable here. [*See* Compl. at 14, Prayer ¶¶ f–g.] While "curative disclosure is the standard and, in general, the preferred remedy," [Mot. at 5,] the Ninth Circuit has made clear that "no court has ever declared disclosure to be the exclusive remedy under the Williams Act." *Pac. Realty Tr. v. APC Invs., Inc.*, 685 F.2d 1083, 1086 (9th Cir. 1982). "To the contrary courts have suggested that an unconditional permanent injunction against proceeding with a tender

offer might be appropriate in at least two situations." *Id.* These situations include when "the offeror willfully attempted to withhold information from the target company's shareholders" and when the offeror engages in "any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer." *Id.* (first quoting *Ronson Corp. v. Liquifin Aktiengesellschaft*, 370 F.Supp. 597, 610–11 n.36 (D.N.J.), *aff'd*, 497 F.2d 394 (3d Cir. 1974)).

Here, Plaintiffs have alleged that Defendants engaged in deceptive practices and withheld material information regarding the Defendants' prior securities law violations through the Offers. [*See, e.g.*, Compl. ¶ 3.] Whether the conditions for a permanent injunction are satisfied is a fact-bound inquiry not suitable for resolution of a motion to dismiss.

Moreover, Defendants' suggestion that Plaintiffs are deprived of both a damages remedy and a post-Offer injunctive remedy proves too much. In *Wellman*, the Court held that the target corporation had standing to seek post-closing equitable relief because the tender offeror's conduct was conducted "swiftly and secretly enough to prevent [target company] from seeking relief before the transaction had been consummated when a preliminary injunction might have had a meaningful effect." 475 F.Supp. at 718. The same logic applies here: Defendants cannot repeatedly make Offers on short time frames to evade detection of Plaintiffs, and then argue that neither damages nor post-Offer equitable relief are unavailable. Such a situation would leave target companies with no avenue of relief under Section 14(e), which contradicts "the Act's goal of protecting investors." *Plaine*, 797 F.2d at 718.

For the foregoing reasons, Plaintiffs can pursue both damages and injunctive relief to remedy Defendants' violations of Section 14(e).

### B. <u>Plaintiffs Have Stated a Section 14(e) Claim</u>

For a target company to state a claim under Section 14(e), the target plaintiff must plead that (1) the "defendant made a false statement of material fact or misleadingly incomplete statement," and (2) "the act or omission of the defendant alleged to violate this

chapter caused the loss for which the plaintiff seeks to recover damages." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1055 (9th Cir. 2023); 15 U.S.C. § 78u-4(b)(4). Where the statement is one of opinion, it is nevertheless actionable if it is (i) subjectively false, (ii) embeds a statement of fact, or (iii) has misleading omissions. 58 F.4th at 1055.

Defendants raise numerous fact-bound arguments regarding Plaintiffs' pleading of a Section 14(e) claim. [*See* Mot. at 6–11.] As addressed below, none is persuasive and none is appropriate to resolve on a motion to dismiss.

**1. The Offers Are Materially Misleading**

As detailed in the Complaint, the Offers were materially misleading in at least two ways: (1) the Offers falsely implied an endorsement from Plaintiffs by being titled an "Offer to Repurchase" and enclosing a form bearing Plaintiffs' wordmark, and (2) the Offers failed to disclose Defendants' history of securities law violations. [*See, e.g.*, Compl. ¶ 3.]

In their Motion, Defendants do not contest that it would be material for the Offers to imply endorsement from Plaintiffs. [*See generally* Mot. at 8–9.] Instead, Plaintiffs argue that no reasonable investor could view the Offers as being endorsed by Plaintiffs. [*See id.*] And with respect to the history of Defendants' securities law violations, Defendants characterize this as a "pure omission" because purportedly "[a]n offeror's reputation, criminal history, or unrelated regulatory disputes . . . are not 'material' to a tender decision." [*Id.* at 10.]

As this Court has recognized, "[w]hether a statement is misleading and whether adverse facts were adequately disclosed are generally questions that should be left to the trier of fact." *Borteanu*, 2023 WL 11017679, at *6 (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)). "Only if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ are these issues appropriately resolved as a matter of law." *Id.* (internal quotation marks and alterations omitted) (quoting *Fecht v. The Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995)).

Here, there are, at a minimum, fact questions as to whether the Offers were materially misleading. While Plaintiff contends that the Offers could not be read to imply an endorsement from Plaintiffs, the Offers included with them a form of Plaintiffs' bearing Plaintiffs' wordmark. [*See* Compl. ¶¶ 58, 68; Gaines Decl., ECF No. 14-1, ¶ 5 ("Exhibit 3 is a Walton™ Title Transfer-Transferor form. This form was sent along with the offers[.]").] Moreover, the Offers are each titled "OFFER TO REPURCHASE," [*see* Compl. ¶¶ 51, 61], and the implication of "re"purchase is that the units are being bought back at the direction of Plaintiffs, not Defendants.

Similarly, reasonable minds can differ on whether it is material to a reasonable investor considering a tender offer whether the offeror has committed violations of the SEC's tender offer rules in the past. Plaintiff provides no support for the proposition that a reasonable investor would not think it important to consider the offeror's prior securities law violations. *See* Mot. at 10:18–25. On the other hand, the North Dakota Securities Commissioner concluded with respect to Defendants in particular that their history of securities violations "would be material to a reasonable seller of securities in determining whether to do business with the tender offeror." [Exhibit A, Stop Order ¶¶ 3–4, *In re Peachtree Partners & Ira J. Gaines* (May 14, 2023); *see* Compl. ¶ 28].

Because materiality presents an issue of fact as to what an investor would consider, Defendants' motion to dismiss on this ground should be denied.

**2. Plaintiffs Have Alleged the Who, What, Where, When, and How of Fraud.**

Plaintiffs agree that, under Fed. R. Civ. P. 9(b) and 15 U.S.C. § 78u-4(b)(1), the Complaint must plead fraud with particularity and identify "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Borteanu*, 2023 WL 11017679, at *3 (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). The Complaint does just that. Plaintiffs have identified who made the Offers [Compl. ¶¶ 50, 60], what the Offers stated [*id.* ¶¶ 51–53, 61–63], when they were made [*id.* ¶¶ 50,

60], and how they were made [*id.* ¶ 49]. Plaintiffs have also identified what was misleading about the Offers [*e.g.*, *id.* ¶ 3] and specific facts that should have been included to make the Offers not misleading [*e.g.*, *id.* ¶¶ 54–57, 64–67]. This is not a case where Defendants are facing a factless narrative on a notice pleading standards. Defendants have the facts, and are simply trying to impose additional pleading burdens beyond that required under Fed. R. Civ. P. 9(b) and 15 U.S.C. § 78u-4(b)(1).

Because Plaintiffs have satisfied the heightened pleading standard, Defendants' motion to dismiss on this ground should be denied.

**3. Subjective Falsity Is Not Required but Is Nevertheless Satisfied**

Defendants argue that Plaintiffs' Section 14(e) claim "must satisfy the 'subjective falsity' requirement — plausible allegations that the speaker did not believe what was said." Mot. at 11:9–18 (citing *In re Finjan*, 58 F.4th at 1056; *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017)).

But *Finjan* and *Dearborn Heights* hold that there are at least three circumstances at issue: "subjective falsity, embedded statements of fact, and misleading omissions." *In re Finjan*, 58 F.4th at 1056; *see also Dearborn Heights*, 856 F.3d at 615–16 ("three different standards for pleading falsity of opinion statements"). The reason the Court in *Finjan* only addressed subjective falsity was because the parties "agree[d] that the statements challenged by [plaintiff] could be false only under a theory of subjective falsity." 58 F.4th at 1056. Because Plaintiffs have alleged that the Offers misleadingly omitted material information, [*see, e.g.*, Compl. ¶¶ 54–57, 64–67], subjective falsity is not a requirement.

Regardless, to plead subjective falsity for an Exchange Act Section 14(e) claim, the plaintiff "need provide only enough factual material to create a 'reasonable inference'—not a 'strong inference'—of subjective falsity." *In re Finjan*, 58 F.4th at 1052. Taking the facts "in the light most favorable to the non-moving party," *e.g.*, *Borteanu*, 2023 WL 11017679, at *2, the Plaintiffs have created a reasonable inference of subjective falsity. Plaintiffs have alleged that, not only that Defendants knew of their prior securities violations, [*see* Compl. ¶¶ 21–31], but that Defendants were on notice that it was materially

misleading to fail to disclose regulatory actions against Defendants because of a determination of the North Dakota Securities Commissioner in 2013 relating to a different tender offer from Defendants, [*see id.* ¶ 28].

#### 4. Defendant Cannot Defeat Allegations of Loss Causation By Introducing Issues of Fact.

With respect to loss causation, Plaintiffs have alleged that "[a]s a direct and proximate result of the Offers, the market price for units of the Fund Partnerships has been artificially depressed[.]" [Compl. ¶ 86.] In their Motion, Defendants argue that there is in fact no market price for the partnership units. [*See* Mot. at 11:19–25.] The only support for this purported fact is Defendants' own statement in the Offers that "there is no established market for the Units." [ECF No. 14-1, Ex. 1 at 1.]

Whether there is a market price for the units is a factual dispute that is not proper for resolution at the motion to dismiss stage. While this Court may consider the texts of the Offers submitted by Mr. Gaines's declaration under the incorporation by reference doctrine, "[i]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *ArubaWater Corp. v. Wells Fargo Bank, N.A.*, 703 F. Supp. 3d 995, 1000 (D. Ariz. 2023) (Logan, J.) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)); *see also* *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 942, n.1 (9th Cir. 2008) (finding it proper to consider disability benefits plan referenced in complaint, but declining to accept truth of the plan's contents where the parties disputed whether defendant actually implemented the plan according to its terms). In other words, this Court may not consider that every statement in the Offers is true just because Defendants stated them in the Offers. Such an assumption is especially misplaced for a Section 14(e) claim, as Plaintiffs allege that the Offers are misleading.

Because Defendants' objection to loss causation is based on material outside the Complaint that this Court cannot consider, Defendants' motion to dismiss on this ground should be denied.

### C. Plaintiffs Have Stated Every Other Claim

Plaintiffs have plausibly alleged claims in Counts 2 through 5 of the Complaint, and Defendants' arguments to the contrary are either wrong as a matter of law and/or fact-bound arguments not suitable for a motion to dismiss.

#### 1. Count 2: Breach of Contract

As alleged in the Complaint, under Section 8.2(c) of the Partnership Agreements, The Gaines Trust and IG Holdings agreed to not "hold . . . out as having the power or authority to bind the [Plaintiffs]." [Compl. ¶ 92.] "The Gaines Trust and IG Holdings have materially breached the Partnership Agreement by (i) having their trustee and/or agent make the Offers and reserve the right to transfer units to the Gaines Trust or IG Holdings and (ii) presenting the Offers in such a way that gives the appearance that the Gaines Trust and/or IG Holdings has the power or authority to bind the Partnership, or is otherwise acting on behalf of the Partnership." [Compl. ¶ 93.] Plaintiffs also allege damages from these breaches including but not limited to "costs of communications with limited partners to correct the misrepresentations made by Defendants in the Offers." [Compl. ¶ 94.]

Defendants nevertheless point to one of ***nineteen*** bullet points in the Offers, which states that "[t]his offer is being made by Peachtree Partners without any approval or endorsement from the Partnership or General Partner, either express or implied." [ECF No. 14-1, Ex. A at 1.] Defendants provide no analogous caselaw demonstrating that this one bullet point as a matter of law means that the Offers do not give the appearance of Defendants holding out power to bind the Plaintiffs. This dearth of support is contrasted with the facts alleged in the Complaint that (1) the Offers included a form bearing Plaintiffs' wordmark, and (2) Peachtree Partners "reserve[d] the right to assign [its] ownership to [its] affiliates" in the Offers, even though the right to approve assignments rests with Plaintiffs, and (3) the Offers are styled as offers to "***RE***PURCHASE," which only Plaintiffs could do. [Compl. ¶¶ 51, 61, 68–70.] Defendants' argument boils down to a fact-intensive inquiry regarding the presentation of Defendants' authority to bind Plaintiffs, and such inquiry cannot be resolved on a motion to dismiss.

**2. Count 3: Tortious Interference with Contract**

In Count 3, Plaintiffs assert a claim against Defendant Ira Gaines individually and/or under the alter ego of Peachtree Partners for causing the Gaines Trust and IG Holdings to breach the Partnership Agreements. [Compl. ¶ 97.] Defendants argue that this claim is improper because Plaintiffs have not plausibly alleged a Section 14(e) violation or breach of contract. [*See* Mot. at 12:21–13:4.] But that is incorrect for the same reasons *supra* Section IV.B and IV.C.1. Defendants' third argument that "plaintiffs cannot sue Gaines individually for inducing a breach by his alleged alter egos," [Mot. at 13:4–6,] ignores Arizona law holding that even an agent of a party to a contract may be liable for tortious interference with contract when the agent is acting for his own benefit, and that this is a factual issue. *See Singh v. Malhotra*, No. 1 CA-CV 17-0033, 2018 WL 1004282, at *5 (Ariz. Ct. App. Feb. 22, 2018) (reversing grant of summary judgment to defendant on tortious interference claim because question of fact whether defendant, as president of party to contract, was acting on behalf of party or himself personally).

Because Plaintiffs have stated a claim for tortious interference with contract, Defendants' motion to dismiss as to Count 3 should be denied.

**3. Count 4: Interference with Business Expectancy**

In Count 4, Plaintiffs allege that Mr. Gaines interfered with Plaintiff's business expectancy with potential investors by (1) making the misleading Offers and (2) falsely stating that Plaintiffs and their affiliates have not returned any money to investors as part of his campaign to "take over Walton and run them out of business." [Compl. ¶¶ 103–05.]

Defendants' argument in the Motion is based on the flawed premise that "the Rule 9(b) standard [] applies because the statement is alleged to be knowingly false." Mot. at 13:19–20. But Fed. R. Civ. P. applies to actions alleging "fraud or mistake," not causes of action where fraud is not an element but is nevertheless pleaded. *See, e.g.*, *AGA S'holders, LLC v. CSK Auto, Inc.*, No. 07-cv-00062-PHX-DGC, 2007 WL 2320532, at *1 (D. Ariz. Aug. 10, 2007) (holding Rule 9(b) not applicable to claim for tortious interference with contract; citing *Vess v. Ciba–Geigy Corp., USA*, 317 F.3d 1097, 1103 (9th Cir.2003)).

Further, the Complaint identifies specific potential investors for future business: those who already invest with Plaintiffs. [Compl. ¶ 101.] This is sufficient to satisfy the applicable Rule 8 plausibility standard.

Because Plaintiffs have stated a claim for interference with business expectancy, Defendants' motion to dismiss as to Count 4 should be denied.

#### 4. Count 5: Declaratory Relief Is Appropriate

In Count 5, Plaintiffs allege there is an actual controversy regarding "the meaning and application of the Partnership Agreements, the validity of the Offers, and the validity of any acceptances of the Offers." [Compl. ¶ 109.] Plaintiffs seek a declaration that "under Section 9.2 of the Partnership Agreements, the Fund General Partners may reject any transfer made as a result of any partner accepting an Offer." [Compl. ¶ 110.]

Defendants' primary argument for dismissing Count 5 is that it is "duplicative" and "[w]ith Counts 1–4 dismissed, the declaratory relief count must also necessarily fail." [Mot. at 14:6–10.] For the reasons *supra*, Counts 1 through 4 state a valid claim, so Defendants' argument is misplaced.

Defendants argue that the demanded relief is "moot" because "the time to tender has long passed, and the complaint makes no allegations have or wish to reject any transfers pending the Court's ruling." Mot. at 14:11–19. To the contrary, the Complaint alleges that there is an actual controversy regarding the "validity of any acceptances of the Offers." [Compl. ¶ 109.] Moreover, Defendants have nowhere committed to stop making similar Offers for Plaintiffs' units, and have shown a history of making similar tender offers for over two decades. [*See* Compl. ¶¶ 24–28.]

Finally, Defendants' argument that "Section 9.2 means what it says" such that a declaration is unnecessary is belied by the parties' disagreement regarding Count 2, *supra*.

Because Plaintiffs have plausibly pleaded entitlement to declaratory relief, Defendants' motion to dismiss as to Count 5 should be denied.

## V. <u>CONCLUSION</u>

For these reasons, Defendants' motion to dismiss should be denied.

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Sean L. McGrane*

Sean L. McGrane (*pro hac vice*)
James M. Brennan (*pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
1000 Key Tower, 127 Public Sq.
Cleveland, OH 44114
Telephone: +1 216 479 8500
Facsimile: +1 216 479 8780

Brian A. Cabianca
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone: (602) 528-4000
Facsimile: (602) 253-8129

*Attorneys for Plaintiffs*